| | |
|---|---|
| **ROGER L. RICHARDS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-13310** |
| **DARREL VANNOY, WARDEN** | **SECTION: "N"(1)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

### State Court Factual and Procedural Background

Petitioner, Roger L. Richards, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. On July 17, 2008, Richards was charged by a bill of indictment with aggravated rape by vaginal penetration of a victim under the age of 13 in violation of La. Rev. Stat. § 14:42.[1] On October 15, 2010, a jury found petitioner guilty as charged.[2] On November 16, 2010, the trial court sentenced petitioner to life imprisonment years at hard labor, without the

---

[1] State Rec., Vol. 1 of 5, Bill of Indictment dated July 17, 2008.
[2] State Rec., Vol. 1 of 8, minute entry dated 10/15/10; Vol. 2 of 8, trial transcript of October 13-15, 2010.

benefit of probation, parole, or suspension of sentence.[3]  On December 1, 2011, the Fourth Circuit Court of Appeal affirmed petitioner's conviction but amended petitioner's sentence to remove the restriction on parole because petitioner was 17 years old at the time of his conviction.[4]  The Louisiana Supreme Court denied writs without stated reasons on April 27, 2012.[5]  Petitioner did not seek a petition for writ of certiorari with the United States Supreme Court.

On March 19, 2013, petitioner filed an application for post-conviction relief with the state district court raising multiple claims for relief.[6]  On April 8, 2013, the state district court denied petitioner's application as to some claims but, as to his ineffective assistance of counsel claim only, granted the application for the "purpose of appointing counsel."[7]  On June 25, 2013, the state district court vacated its April 8, 2013 decision as to the appointment of counsel.[8]  On November 20, 2014, the state district court denied petitioner's ineffective assistance of counsel claim.[9]

On June 17, 2014, petitioner, unaware of the April 8, 2013 ruling, sought a petition for writ of mandamus with the Fourth Circuit Court of Appeal compelling the state district court to rule on his post-conviction application.[10]  On June 26, 2014, the Fourth Circuit Court of Appeal found that, on April 8, 2013, the trial court had denied all of petitioner's claims raised in his application

---

[3] State Rec., Vol. 1 of 8, minute entry dated November 16, 2010; Vol. 2 of 8, sentencing transcript of November 16, 2010.
[4] State v. Richards, 78 So. 3d 864 (La. App. 4th Cir. 2011); State Rec., Vol. 2 of 5.
[5] State v. Richards, 86 So. 3d 627 (La. 2012) (mem.); State Rec., Vol. 2 of 5.
[6] The state district court record does not include a copy of petitioner's uniform application for post-conviction relief. The records for the Louisiana Fourth Circuit Court of Appeal and the Louisiana Supreme Court include copies of the application but neither of the copies bear an executed certificate of service.  The Docket Master reflects that the state district court received petitioner's application on April 2, 2013.  State Rec., Vol. 1 of 5, Docket Master entry dated April 2, 2013.  Federal habeas courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system."  Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006).  The state accepts petitioner's representation that he mailed his application on March 19, 2013.  Rec. Doc. 13, p. 3.
[7] State Rec., Vol. 1 of 5, Docket Master entry dated April 8, 2013; minute entry dated April 8, 2013; order dated April 25, 2013.
[8] State Rec., Vol. 1 of 5, minute entry dated June 25, 2013.
[9] State Rec., Vol. 1 of 5, Docket Master entry dated November 20, 2014.
[10] State Rec., Vol. 4 of 5, Petition for Writ of Mandamus, 2014-K-0620, filed June 17, 2014 (dated May 2014).

for post-conviction relief except for his claim of ineffective assistance of counsel. The Court ordered the state district court to consider the claim within 60 days and to provide petitioner with a copy of the April 8, 2013 judgment.[11]

On October 23, 2014, not having received a copy of the April 2013 judgment or a ruling from the state district court on his ineffective assistance of counsel claim, petitioner filed a motion to enforce the appellate court's order with the Fourth Circuit Court of Appeal.[12] On November 18, 2014, the Fourth Circuit Court of Appeal again ordered the state district court to consider petitioner's ineffective assistance of counsel claim.[13] On November 20, 2014, the state district court found that petitioner failed to prove the requisite elements of an ineffective assistance of counsel claim and denied relief.[14]

On January 6, 2015, petitioner, having not received notice of the November 20, 2014 state district court ruling, filed a second motion to enforce the appellate court's supervisory writ grant with the Fourth Circuit.[15] On February 19, 2015, the Fourth Circuit Court of Appeal denied relief finding the district court had denied the ineffective assistance of counsel claim on November 20, 2014.[16] On March 25, 2015, petitioner filed a writ application with the Fourth Circuit Court of Appeal seeking review of the state district court's denial of his post-conviction application.[17] On May 1, 2015, the Fourth Circuit found "no error in the judgments of the district court summarily denying relator's application for post-conviction relief on August 8, 2013 and November 20, 2014."[18] Petitioner filed an application for writ with the Louisiana Supreme Court on May 26,

---

[11] State Rec., Vol. 4 of 5, 4th Cir. Opinion, 2014-KH-0620, dated June 26, 2014.
[12] State Rec., Vol. 4 of 5, Motion to Enforce Appellate Court's Order, signed October 23, 2014.
[13] State Rec., Vol. 4 of 5, 4th Cir. Opinion, 2014-K-1241, dated November 18, 2014.
[14] State Rec., Vol. 1 of 5, Docket Master entry dated November 20, 2014.
[15] State Rec., Vol. 4 of 5, Motion to Enforce Appellate Court's Supervisory Writ Grant, signed January 6, 2015.
[16] State Rec., Vol. 4 of 5, 4th Cir. Opinion, 2015-K-0118, dated February 19, 2015.
[17] State Rec., Vol. 4 of 5, Application for Writ, 2015-K-0388, signed March 25, 2015.
[18] State Rec., Vol. 4 of 5, 4th Cir. Opinion, 2015-K-0388, dated May 1, 2015.

2015.[19] On April 8, 2016, the Louisiana Supreme Court denied relief finding that petitioner failed

to show he received ineffective assistance of counsel under Strickland v. Washington, 466 U.S.

668 (1984), and failed to satisfy his post-conviction burden of proof as to the other claims.[20]

On July 19, 2016, petitioner filed the instant federal application seeking habeas corpus

relief in which he asserts the following claims for relief: (1) insufficiency of the evidence; (2)

denial of right to fair trial during voir dire selection; (3) denial of fair trial when trial court failed

to give the jury an "other crimes" limiting instruction; and (4) ineffective assistance of counsel in

failing to conduct pretrial investigation, subpoena Ray Williams, obtain certain medical evidence,

and raise a Batson challenge.[21]

The state has filed a response arguing that the application should be dismissed as

untimely.[22] The state did not address the merits of petitioner's claims. Petitioner filed a reply

arguing that his application is timely filed, and alternatively, equitable tolling is warranted.[23]

For the reasons set forth below, the Court rejects the state's timeliness argument and

proceeds to a review of the claims.

### Timeliness

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a statute

of limitations for petitioners seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254.

Specifically, the AEDPA provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas
> corpus by a person in custody pursuant to the judgment of a State court. The
> limitation period shall run from the latest of –

---

[19] State Rec., Vol. 5 of 5, Application for Writ, 15 KH 1044, signed May 26, 2015.
[20] State ex rel. Richards v. State, 188 So. 3d 1048 (La. 2016) (per curiam), State Rec., Vol. 5 of 5.
[21] Rec. Doc. 1. "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003). Petitioner signed his petition and certificate of service on July 19, 2016. Rec. Doc. 1, p. 9; Rec. Doc. 1-2, p. 10.
[22] Rec. Doc. 13.
[23] Rec. Doc. 14.

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Attempting to invoke Subsection (B), petitioner asserts that the state's failure to provide him with a copy of the November 20, 2014 ruling impeded his ability to seek relief in a timely manner. He contends that he is entitled to statutory tolling for the period of November 20, 2014 until February 19, 2015, when the Fourth Circuit issued its order advising petitioner that the state district court had ruled. Because petitioner's application is timely under Subsection (A), it is not necessary to address Subsection (B).

As noted, under Subsection (A), a petitioner must bring his § 2254 claims within one year of the date on which his underlying criminal judgment becomes "final." On that point, the United States Fifth Circuit Court of Appeals has explained:

The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003). However, "[i]f the

5

defendant stops the appeal process before that point," ... "the conviction becomes final when the time for seeking further direct review in the state court expires." Id. at 694; see also Foreman v. Dretke, 383 F.3d 336, 338 (5th Cir. 2004) (Section 2244(d)(1)(A) gives alternative routes for finalizing a conviction: either direct review is completed or the time to pursue direct review expires).

      Although federal, not state, law determines when a judgment is final for federal habeas purposes, a necessary part of the finality inquiry is determining whether the petitioner is still able to seek further direct review. See Foreman, 383 F.3d at 338-39. As a result, this court looks to state law in determining how long a prisoner has to file a direct appeal. See Causey v. Cain, 450 F.3d 601, 606 (5th Cir. 2006); Roberts, 319 F.3d at 693.

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008).

Petitioner was sentenced on November 16, 2010. His direct appeal became final on July 26, 2012, when the time for filing a petition for writ of certiorari with the United States Supreme Court expired. See Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (time for filing for certiorari with the United States Supreme Court is included in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1). Accordingly, petitioner's period in which to file his federal application for habeas corpus relief commenced on July 26, 2012, and expired one year later, unless that deadline was extended through tolling.

The Court first considers statutory tolling. Regarding the statute of limitations, the AEDPA expressly provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). The decisions of the Fifth Circuit and other federal courts have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

[Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one [-]year period. Under the plain language of the statute, any time that passed between the

time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one [-]year period of limitation.

Flanagan v. Johnson, 154 F.3d 196, 199 n. 1 (5th Cir. 1998); accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL 609926, at *1 (4th Cir. Aug. 27, 1998) (per curiam) (Table, Text in Westlaw); Gray v. Waters, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must " 'conform with a state's applicable procedural filing requirements,' " such as timeliness and location of filing. Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005) ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303, 306-307 n. 4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000). The timeliness consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings filed by a prisoner. Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.' " Carey v. Saffold, 536 U.S. 214, 219-20 (2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until " 'further appellate review [is] unavailable under [Louisiana's] procedures.' ").

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. Dilworth v. Johnson, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county). A "pertinent judgment or claim" requires that the state filings

for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. Godfrey v. Dretke, 396 F.3d 681, 686-88 (5th Cir. 2005).

After two hundred and thirty-five (235) days elapsed, petitioner tolled his federal limitations period by filing a post-conviction application with the state district court on March 19, 2013. That application was denied on November 20, 2014. Petitioner normally would have had only thirty days to seek further review from the Court of Appeal. See Louisiana Uniform Rules of the Courts of Appeal Rule 4-3; see also Melancon v. Kaylo, 259 F.3d 401, 404-06 (5th Cir. 2001); Campbell v. Cain, Civ. Action No. 06-3983, 2007 WL 2363149, at *3 & n.24 (E.D. La. Aug. 15, 2007). Thus, generally, his time to file a writ would have expired on December 22, 2014.[24] However, petitioner did not receive notice of the ruling. Petitioner continued to diligently seek a ruling on his ineffective assistance claim by filing a third writ with the Fourth Circuit on January 6, 2015. After the Fourth Circuit denied that writ on February 19, 2015, petitioner filed a writ seeking review of the state district court's denial of his post-conviction relief application on March 25, 2015, one hundred and twenty-three (123) days after his post-conviction application was denied.

The state argues that petitioner is not entitled to statutory tolling credit for the 92 days between December 22, 2014 and March 25, 2015, when petitioner filed his final writ application with the Fourth Circuit. It must be noted that the Fourth Circuit Court of Appeal did not deny petitioner's writ application as untimely; instead, the court expressly denied his claims on the

---

[24] In this case, the thirtieth day of that period fell on a Saturday, December 20, 2014, and, therefore, petitioner had until Monday, December 22, 2014, to file a writ application with the Louisiana Fourth Circuit Court of Appeal. See La. Code Crim. P. art. 13; La. Rev. Stat. Ann. § 1:55.

merits stating that it found "no error in the judgments of the district court summarily denying relator's application for post-conviction relief on August 8, 2013 and November 20, 2014."[25] The Louisiana Supreme Court also denied petitioner's writ application on the merits.[26]

In Grillette v.Warden, Winn Corr.Center, 372 F.3d 765 (5th Cir. 2004), the United States Fifth Circuit Court of Appeals faced a similar scenario and found that tolling continued uninterrupted. The Fifth Circuit held:

> [A]t no point did the state trial court or the Louisiana Court of Appeal fault Grillette for failure to comply with Rule 4-3. Whereas in Melancon, the Louisiana Court of Appeal expressly indicated that Melancon's application "appeared untimely," in this case it is undisputed that the Louisiana Court of Appeal disposed of Grillette's application "on the merits," without any notation that his application was time-barred. We acknowledge, as the State asserts, that a state court's consideration of an application "on the merits" is not by itself conclusive proof that the application was timely filed in accordance with that state's timeliness laws and rules and thus "pending." See [Carey v.] Saffold, 536 U.S. [214,] 226, 122 S. Ct. 2134 [ (2002) ] [ (2002) ] (noting different reasons why a court might "address the merits of a claim that it believes was presented in an untimely way"). Rule 4-3, however, prohibits the Court of Appeal from considering the merits of an application that is not filed with the appellate court within the original or extended return date, "in the absence of a showing that the delay in filing was not due to the applicant's fault." *Because the Court of Appeal did consider the merits of Grillette's application, it must have determined that the application was timely either because the trial court impliedly extended the return date and/or because the delay was not due to Grillette's fault.*
>
> Moreover, as Grillette correctly points out, when the denial of an application is based on untimeliness, Louisiana courts routinely and unmistakably indicate so in their opinions. See, e.g., Carter v. Rhea, 785 So.2d 1022, 1022 (La. Ct. App. 4th 2001) ("WRIT APPLICATION DISMISSED AS UNTIMELY."); Lawyer v. Succession of Kountz Through Cupit, 703 So.2d 233, 233 (La. Ct. App. 4th Cir. 1997) ("WRIT NOT CONSIDERED."); Watts v. Dorignac, 681 So.2d 955, 955 (La. Ct. App. 1st Cir. 1996) ("WRIT NOT CONSIDERED"). Thus, had the Louisiana Court of Appeal decided to reach the merits of the application notwithstanding a determination that the application was untimely, it appears that the court would have indicated any such untimeliness in its opinion.

Grillette, 372 F.3d at 775 (emphasis added).

---

[25] State Rec., Vol 4 of 5, 4th Cir. Opinion, 2015-K-0388, dated May 1, 2015.
[26] State ex rel. Richards v. State, 188 So. 3d 1048 (La. 2016) (per curiam); State Rec., Vol. 5 of 5.

This Court should not unilaterally ignore the presumptions employed in <u>Grillette</u>. <u>Bourgeois v. Bergeron</u>, Civ. Action No. 09-3185, 2009 WL 5088756, at *4 (E.D. La. Dec. 23, 2009). Therefore, out of an abundance of caution, the Court will toll the federal limitations period in the instant case from the date the post-conviction application was filed until the date on which petitioner's application seeking review was denied by the Louisiana Supreme Court on April 8, 2016.

When the limitations period then resumed running again on April 9, 2016, 235 days had passed and petitioner had 130 days of the one-year limitations period remaining. Therefore, he had until August 16, 2016, to again toll the federal limitations period or, barring that, to file his federal application. Because petitioner filed his habeas petition on July 19, 2016, it is timely. Therefore, his claims will be considered on the merits.

**<u>Standards of Review</u>**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." <u>Bell v. Cone</u>, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); <u>see also</u> 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application

for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a

determination of a factual issue made by a State court shall be presumed to be correct. The

applicant shall have the burden of rebutting the presumption of correctness by clear and convincing

evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer

to the state court's decision on the merits of such a claim unless that decision "was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the " 'contrary

to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell,

535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has

explained:

> A state court decision is contrary to clearly established precedent if the state court
> applies a rule that contradicts the governing law set forth in the [United States]
> Supreme Court's cases. A state-court decision will also be contrary to clearly
> established precedent if the state court confronts a set of facts that are materially
> indistinguishable from a decision of the [United States] Supreme Court and
> nevertheless arrives at a result different from [United States] Supreme Court
> precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets,

and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has

held: "[A] state-court decision is an unreasonable application of our clearly established precedent

if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a

particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1705 (2014). However, the

Supreme Court cautioned:

Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id., at 1706 (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.

If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that*

*there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants—and federal courts— from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein. White, 134 S. Ct. at 1701.

### Facts

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as follows:

> In October 2007, the eight year old victim, L.A., whose date of birth is April 26, 1999, lived on Thalia Street in New Orleans, with her mother, T.A., and her two uncles, Christopher and Nicholas Joseph.[1] Mr. Richards lived next door. On the date of the incident, L.A. was at home with her cousin Ray Allen when Mr. Richards came over to her house. Mr. Allen was working on the computer, which was located in the hallway; and L.A. was sitting on the sofa. Mr. Richards sat next to L.A. on the sofa. He asked her to go put on a DVD, which would have required her to go to her bedroom where the DVD player was located. According to L.A., she did not want to go to her bedroom because she knew what would happen. When she refused to go to her bedroom on her own, Mr. Richards dragged her to the bedroom and locked the door. He then removed the Disney jeans that L.A. was wearing, pulled down his pants, and got on top of her. According to L.A., something got on her Disney jeans. Fearing that her mother would get mad at her for staining her jeans, she took off her jeans and hid them in a plastic Wal–Mart bag on top of her closet.
>
> [1] For privacy reasons, the initials of the victim and her immediate family are used in this opinion.
>
> L.A., who was eleven at the time of the trial, testified that she did not tell anyone what happened until seven months later when her mother found the jeans. In response to her mother's questions regarding what happened, L.A. testified that she told her mother that "Roger" had "raped" her. She further testified that she knew Roger Richards from when she was small, that he was friends with her uncles, and

that he would sometimes hang out with her uncles at her house. She still further testified that she understood the difference between the truth and a lie. L.A. stated that she told Dr. Adrienne Atzemis, the child abuse pediatrician, the truth about what Mr. Richards had done to her. In court, she identified a picture depicting his actions that she had drawn for Dr. Atzemis. She also identified both her jeans and Mr. Richards.

T.A., L.A.'s mother, corroborated L.A.'s testimony regarding first learning about the incident seven months later when she found L.A.'s blood-stained Disney jeans. On April 16, 2008, T.A. was cleaning the house when she found the jeans. She confronted L.A. and asked her if she had started her menstrual period. L.A. responded in the negative. T.A. next asked L.A. if somebody had touched her. L.A. responded "Roger." T.A. then asked L.A. when this had occurred. L.A. responded that it happened on the same day she told her mother that she was burning between her legs. (On that day, October 3, 2007, T.A. took L.A. to Children's Hospital where she was treated for a urinary tract infection.)

On April 16, 2008, immediately after learning what had occurred with Mr. Richards, T.A. brought L.A. to Children's Hospital. At the hospital, T.A. and L.A. met with New Orleans Police Department ("NOPD") Detective Journay Ross. T.A. gave L.A.'s blood-stained Disney jeans to Detective Ross. In the emergency room, the treating physician documented in the "HISTORY" portion of the "Emergency Department Record" that L.A. had "admitted to [her] mother that 'Roger' had touched her b/t [between] her legs and stuck his private part inside of her & that he was on top of her." The doctor further documented that L.A. told her mother that Roger had done this on "that day when between my legs was burning and you brought me to the hospital." The doctor still further documented that L.A. previously was seen at Children's Hospital on October 3, 2007. On that date, she was diagnosed with a urinary tract infection, prescribed Bactrim, and sent home.

The hospital records further reflect that during the April 16, 2008, hospital visit L.A. was tested for sexually transmitted diseases and tested positive for one— chlamydia. On that visit, L.A. also was referred to see Dr. Atzemis.

Dr. Atzemis, who was qualified as an expert in child abuse pediatrics, testified that on May 7, 2008, she met with and examined L.A. Dr. Atzemis testified that her routine is to speak with the victim before conducting a physical exam so that she can determine where to focus her attention. Dr. Atzemis testified that when she spoke with L.A. the child was hesitant to talk about what Mr. Richards had done to her and that the child would sometimes draw pictures depicting his actions. Dr. Atzemis identified a blow-up of one of the pictures that L.A. had drawn for her. Dr. Atzemis stated that L.A. told her that Mr. Richards had sexually abused her on more than one occasion. Dr. Atzemis further stated that L.A. described the following "multiple forms of contact" by Mr. Richards: he had her place her mouth on his private part, he fondled her, and he stuck his private part in her behind. Dr. Atzemis

still further stated that L.A. told her that Mr. Richards had white stuff coming from his private part that landed on L.A.'s pants when he was lying on top of her.

After talking with L.A., Dr. Atzemis conducted a physical exam of her. Although L.A.'s physical exam was normal, Dr. Atzemis explained that it was common to find no physical evidence of sexual abuse. She noted that this was especially true in this case given the length of time between the alleged abuse and the physical exam. She also noted that any tear that might have occurred would have healed quickly.

Dr. Atzemis tested L.A. and confirmed that she no longer had vaginal chlamydia. Discussing L.A.'s prior diagnosis of chlamydia, Dr. Atzemis explained that chlamydia is a sexually transmitted disease that is first detected through a urine test. To confirm the diagnosis, a culture is taken from the vagina. Dr. Atzemis further explained that chlamydia could only be contracted when the infected area comes in direct contact with infected body fluids, such as semen. Dr. Atzemis thus concluded that L.A. had been sexually abused and that her contacting of chlamydia was consistent with intimate sexual contact.

Jodie Clements, who was qualified as an expert in the field of serology, testified that she was employed by the NOPD as a serologist and a criminalist. Ms. Clements testified that she tested L.A.'s Disney jeans and confirmed that the stain on them tested positive for seminal fluid and blood. She, however, was unable to confirm the presence of sperm. Based on her findings, she forwarded the samples for DNA testing.

Shana Mills, who was qualified as an expert in DNA analysis, testified that she was employed as a forensic biologist at Bode Technology in Virginia. Ms. Mills confirmed with a reasonable degree of scientific certainty that Mr. Richards was the contributor of the sperm found on L.A.'s jeans. Quantifying the certainty, she testified that the chance the contributor of the sperm was someone other than Mr. Richards was one in eighty-three quintillion among the United States African–American population.

Pursuant to La. C.E. art. 412.2,[2] the State, over the defense' objection, presented the testimony of K.P., who was born on July 2, 1993.[3] K.P. testified that in March 2008 Mr. Richards forcibly raped her. Mr. Richards was convicted of raping K.P. in an unrelated proceeding. K.P. testified that she did not know L.A.

[2] Louisiana Code of Evidence Article 412.2 provides:

A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.

B. In a case in which the state intends to offer evidence under the provisions of this Article, the prosecution shall, upon request of the accused, provide

reasonable notice in advance of trial of the nature of any such evidence it intends
to introduce at trial for such purposes.

C. This Article shall not be construed to limit the admission or consideration of
evidence under any other rule.

[3] To protect the victim's privacy, her initials are used in this opinion.

In his defense, Mr. Richards called three witnesses: Detective Ross; Christopher Joseph, L.A.'s uncle; and Jasmine Williams, Mr. Richards' former girlfriend.

Detective Ross, when called by the defense, testified that she could not recall without reviewing her report if Ray Allen, L.A.'s cousin, was in the house at the time of the incident in question. Likewise, she testified that if she questioned Ray Allen about the incident it would have been listed in her report. On cross-examination, Detective Ross testified that she took the bucal swab from Mr. Richards in court pursuant to a court order.

Christopher Joseph, L.A.'s uncle, testified that Mr. Richards would sometimes come over to their house with his girlfriends; however, he had no knowledge of Mr. Richards ever having sex with his girlfriends while he was there. Mr. Joseph further testified that there was a computer in the hallway some distance from L.A.'s bedroom and that the door to her bedroom was not visible from the spot where the computer was located. Mr. Joseph still further testified that he left the house when only L.A. and Mr. Richards were present. Mr. Joseph compared Mr. Richards to a brother.

Ms. Williams testified that she dated Mr. Richards for about three months in 2007. According to Ms. Williams, she and Mr. Richards had sex more than once at his cousin's house on a bed that had clothes strewn all around.[27]

## Petitioner's Claims

## Sufficiency of the Evidence

Petitioner's first claim is that there was insufficient evidence to support his conviction. On direct appeal, the Louisiana Fourth Circuit Court of Appeal denied that claim, holding:

Mr. Richards' first assignment of error is that the evidence was insufficient to convict him of aggravated rape. In State v. Brown, 03–0897, p. 22 (La. 4/12/05), 907 So.2d 1, 18, the Louisiana Supreme Court set forth the following standard for reviewing a claim of insufficiency of evidence:

When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 61

---

[27] State v. Richards, 78 So. 3d 864, 866-68 (La. App. 4th Cir. 2011); State Rec., Vol. 2 of 5.

L.Ed.2d 560 (1979). Under this standard, the appellate court "must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." State v. Neal, 00–0674, (La.6/29/01), 796 So.2d 649, 657 (citing State v. Captville, 448 So.2d 676, 678 (La. 1984)).

When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 requires that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." Neal, 796 So.2d at 657. Ultimately, all evidence, both direct and circumstantial must be sufficient under Jackson to prove guilt beyond a reasonable doubt to a rational jury. Id. (citing State v. Rosiere, 488 So.2d 965, 968 (La. 1986)).

It is not the function of the appellate court to assess the credibility of witnesses or reweigh the evidence. State v. Cummings, 668 So.2d 1132 (La. 1996); State v. Rosiere, 488 So. 2d 965, 968 (La. 1986). The determination of credibility is a question of fact within the sound discretion of the trier of fact and will not be disturbed unless clearly contrary to the evidence. State v. Vessell, 450 So. 2d 938, 943 (La. 1984).

In this case, Mr. Richards was convicted of aggravated rape. Aggravated rape is defined, in pertinent part, to mean a rape committed where the vaginal intercourse is deemed to be without the lawful consent of the victim because the victim is under the age of thirteen years. La. R.S. 14:42(A)(4). Rape is defined, in pertinent part, as vaginal sexual intercourse with a female person committed without the person's lawful consent. La. R.S. 14:41(A). Emission is not necessary; and any sexual penetration, however slight, is sufficient to complete the crime. La. R.S. 14:41(B). The testimony of the victim alone is sufficient to establish penetration. State v. Hubbard, 97–916, pp. 9–10 (La.App. 5 Cir. 1/27/98), 708 So. 2d 1099, 1104.

Mr. Roger contends that the State failed to established penetration, an essential element of the crime of aggravated rape. He points out that the indictment charged a violation by "vaginal intercourse." He emphasizes that the only evidence of penetration that the State introduced was the victim's testimony that Roger "raped" her. He further emphasizes the lack of evidence that the victim, who was eleven years old at the time of trial, knew what the generic term "rape" meant. He contends that this case is indistinguishable from State v. Marigny, 532 So.2d 420 (La.App. 1st Cir.1988).

In Marigny, supra, the appellate court found insufficient evidence to establish sexual intercourse when a fifteen year old girl, referred to as Ms. "A", testified only that she and the defendant "had sex." Marigny, 532 So.2d at 422. The appellate court's finding was premised on the lack of evidence; the court reasoned that:

The only evidence introduced at trial relating to proof of sexual intercourse consists of Ms. "A" 's testimony that she and the defendant "had sex" and the testimony of Ms. "A" 's mother that Ms. "A" made the same statement to her. There was no evidence that Ms. "A" understood the phrase "had sex" to mean sexual intercourse.... Nor was any medical evidence of penetration presented, although it was stated by other witnesses that the alleged victim had been taken to at least two doctors in connection with this.

Marigny, 532 So.2d at 422. Based on its finding that the evidence was insufficient, the appellate court set aside the defendant's conviction for carnal knowledge of a juvenile and entered the lesser included verdict of attempted carnal knowledge of a juvenile.

Contrary to Mr. Richards' contention, the instant case is factually distinguishable from the Marigny case. L.A.'s testimony that she was raped was not the sole evidence presented by the State of penetration. Although the State may not have established that L.A. understood the meaning of the term rape, it corroborated L.A.'s testimony with medical evidence that vaginal penetration took place. Dr. Atzemis testified that L.A.'s vagina was infected with chlamydia. Dr. Atzemis explained that the only manner in which L.A. could have contracted chlamydia was through intimate sexual contact during which an infected body fluid, such as semen, came into contact with her vagina. Other testimony regarding DNA testing established that the semen found mixed with the blood stain on L.A.'s jeans came from Mr. Richards. Finally, the Children's Hospital medical records from the April 2008 emergency room visit indicate that the history provided to the examining doctor was that L.A. told her mother that Mr. Richards stuck his private part in her. Viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found all of the essential elements of the offense of aggravated rape by vaginal penetration. This assignment of error lacks merit.[28]

The Louisiana Supreme Court then likewise denied relief without assigning additional reasons.[29]

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Taylor

---

[28] State v. Richards, 78 So. 3d 864, 869-70 (La. App. 4th Cir. 2011); State Rec., Vol. 2 of 5.
[29] State v. Richards, 86 So. 3d 627 (La. 2012) (mem.); State Rec.,Vol. 3 of 5.

v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000). Petitioner has not made such a showing.

As the Louisiana Fourth Circuit Court of Appeal correctly noted, claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979). In Jackson, the United States Supreme Court held that, in assessing such a claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.' " Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added); see also Cavazos v. Smith, 565 U.S. 1, 2 (2011) ("[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. ... Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold."). Moreover, because the state court's decision applying the already deferential Jackson standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential." Parker v. Matthews, 132 S. Ct. 2148, 2152 (2012); see also Coleman v. Johnson, 132 S. Ct. 2060, 2062 (2012).

Further, it must be remembered that Louisiana's circumstantial evidence standard requiring that every reasonable hypothesis of innocence be excluded does not apply in federal habeas corpus proceedings; in these proceedings, only the Jackson standard need be satisfied, even if state law

would impose a more demanding standard of proof. <u>Foy v. Donnelly</u>, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); <u>Higgins v. Cain</u>, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n.38 (E.D. La. Mar. 8, 2010), <u>aff'd</u>, 434 F. App'x 405 (5th Cir. 2011); <u>Williams v. Cain</u>, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), <u>aff'd</u>, 408 F. App'x 817 (5th Cir. 2011); <u>Davis v. Cain</u>, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); <u>Wade v. Cain</u>, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008), <u>aff'd</u>, 372 F. App'x 549 (5th Cir. Apr. 9, 2010); <u>see also</u> <u>Coleman</u>, 132 S. Ct. at 2064 ("Under <u>Jackson</u>, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." (citation and internal quotation marks omitted)).

As he did before the state courts, petitioner argues that the state failed to prove vaginal penetration. He argues that there was no evidence of penetration other than L.A.'s testimony that petitioner raped her and that there was no evidence that L.A. knew what "rape" means. Under Louisiana law, to prove aggravated rape of a child under 13 years old, a violation of La. Rev. Stat. § 14:42, the State must prove: (1) anal, oral or vaginal penetration deemed without consent of the victim because of (2) the victim's age at the time of the rape. <u>State v. Williams</u>, 950 So.2d 126 (La. App. 2d Cir. 2007); <u>State v. Wright</u>, 690 So.2d 850, 856 (La. App. 3d Cir.1997). Moreover, "[a]ny penetration, however slight, of the aperture of the female genitalia, even its external features, is sufficient." <u>State v. Anderson</u>, 499 So. 2d 1252, 1253 (La. App. 4th Cir. 1987) (citing, <u>State v. Bertrand</u>, 461 So.2d 1159, 1162 (La. App. 3d 1984), <u>writ denied,</u> 464 So.2d 314 (La. 1985)).

L.A. testified that petitioner "raped" her.[30]  L.A.'s testimony, however, was not the only evidence of penetration.  The state presented testimonial and medical evidence corroborating that vaginal penetration took place.  Emergency room records from April 16, 2008 indicated that L.A. told her mother that petitioner "stuck his private part inside of her & that he was on top of her."[31]  Dr. Atzemis testified that L.A tested positive for chlamydia, a sexually transmitted disease which she explained could only be transmitted by direct contact between L.A's vagina and infected body fluid, such as semen.[32]  Dr. Atzemis concluded that L.A's history and physical findings, including the finding of chlamydia were consistent with sexual abuse.[33]  Furthermore, there was evidence of the presence of seminal fluid mixed with blood on L.A.'s jeans.[34]  Finally, DNA testing indicated that petitioner's seminal fluid was inside the crotch of L.A.'s jeans.[35]

In summary, for the reasons explained by the Louisiana Fourth Circuit Court of Appeal, it is clear that when the evidence in this case is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdict was *irrational*.  To the contrary, a review of the record establishes that there was more than sufficient proof to support the jury's verdict

Even if, on collateral review, this Court did not owe deference to the verdict or the state court's determination of this issue under the AEDPA, the evidence sufficiently supports the verdict pursuant to Jackson.  Therefore, petitioner cannot show that—under the doubly deferential standard—the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, relief is not warranted.

---

[30] State Rec., Vol. 2 of 5, trial transcript, pp. 132, 135, dated October 13, 14, and 15, 2010.
[31] State v. Richards, 78 So. 3d 864, 867 (La. App. 4th Cir. 2011); State Rec., Vol. 2 of 5.
[32] State Rec., Vol. 2 of 5, trial transcript, pp. 80-81, dated October 13, 14, and 15, 2010.
[33] Id., at p. 84.
[34] Id., at pp. 101, 108.
[35] Id., at pp. 153-56, 161, 165.

# Denial of a Fair Trial

Petitioner next claims that his right to a fair trial was violated when the prosecutor was permitted to exercise more than 12 peremptory challenges to exclude all African-Americans from the jury in violation of <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986). He also argues that, while several prospective jurors admitted during jury selection that that could not be impartial as the victim was a child, the trial court failed to remove them for cause or rehabilitate them and they were selected as jurors.

In <u>Batson</u>, the Supreme Court held that purposeful racial discrimination in the use of peremptory strikes of prospective jurors violates the Equal Protection Clause. <u>Batson</u>, 476 U.S. at 89. The United States Supreme Court has outlined the appropriate analysis for addressing a <u>Batson</u> challenge:

> A defendant's <u>Batson</u> challenge to a peremptory strike requires a three-step inquiry. First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. 476 U.S., at 96-97, 106 S. Ct. 1712. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. <u>Id.</u>, at 97-98, 106 S. Ct. 1712. Although the prosecutor must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive, or even plausible"; so long as the reason is not inherently discriminatory, it suffices. <u>Purkett v. Elem</u>, 514 U.S. 765, 767-768, 115 S. Ct. 1769, 131 L. Ed.2d 834 (1995) (per curiam). Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination. <u>Batson</u>, <u>supra</u>, at 98, 106 S. Ct. 1712; <u>Miller-El v. Dretke</u>, 545 U.S. [231, 251-52], 125 S. Ct. 2317, 2331-2332, 162 L. Ed.2d 196 (2005). This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." <u>Purkett</u>, <u>supra</u>, at 768, 115 S. Ct. 1769.

<u>Rice v. Collins</u>, 546 U.S. 333, 338 (2006).

To establish a prima facie case, the petitioner must show a combination of the following factors: (1) The prosecutor's challenge was directed at a member of a defendant's cognizable racial

group. (2) The challenge was peremptory rather than for cause. (3) Sufficient circumstances raise

an inference that the prosecutor used peremptory strikes to exclude the venire person because of

race. Batson, 476 U.S. at 96 (citations omitted). As the United States Fifth Circuit recently made

clear, unless this prima facie showing is made, there is no need for the court to consider the final

two steps:

> The Supreme Court and this court have both granted writs based on findings that state courts had made unreasonable factual determinations in rejecting Batson claims. Miller-El II, 545 U.S. at 266, 125 S. Ct. 2317; Reed [v. Quarterman], 555 F.3d [364,] 382 [5th Cir. 2009]. In doing so, those cases relied heavily on comparative juror analysis. That analysis comes into play in the final stage of the Batson inquiry for determining whether a prosecutor used a peremptory strike in a racially discriminatory manner. Before that point, the defendant must have first made a prima facie showing that the prosecutor exercised peremptory challenges on the basis of race; in response, the prosecutor must have articulated a race-neutral reason for striking the juror in question. Batson, 476 U.S. at 96-98, 106 S. Ct. 1712. That requires the court to then make the ultimate determination whether the defendant carried her burden of proving purposeful discrimination. Batson, 476 U.S. at 96-98, 106 S. Ct. 1712; see Purkett v. Elem, 514 U.S. 765, 768, 115 S. Ct. 1769, 131 L.Ed.2d 834 (1995).

Chamberlin v. Fisher, 855 F.3d 657, 663-64 (5th Cir. 2017).

In the instant case, the defense did not make a Batson challenge at trial. The issue was not

raised by petitioner until post-conviction review, where his arguments were, as they are here,

without any factual support or information on which such a claim could be supported. He presents

no basis on which the state courts might have ruled differently. His claim is entirely conclusory

and not otherwise supported by fact.

Richards simply has not demonstrated a prima facie case of racial discrimination. First,

the record does not support petitioner's claim the state was allowed more than twelve peremptory

challenges. The minutes from jury selection reflect that the state used only ten peremptory

challenges.[36] While he claims that the state used its peremptory challenges to strike all the African-

---

[36] State Rec. Vol. 1 of 5, minute entry dated October 13, 2010; minute entry dated October 14, 2010.

Americans from the venire, he provides no evidence demonstrating the race of excluded jurors or any evidence to support his unsupported allegation that the state misused its peremptory strikes. Nor does he offer any evidence of the racial composition of the venire or the racial composition of the final trial jury. Petitioner offers no reasons for his failure to do so here or in the state courts. While there is no transcript of the voir dire from his trial, given there was no <u>Batson</u> objection and review of the record indicates that voir dire examination was conducted without objection[37], the transcript would not assist in analyzing Richards' claim as it would not have revealed the race of the prospective jurors.

Petitioner's claim that several jurors were not impartial fares no better. The United States Constitution protects a criminal defendant's right to be tried by an impartial jury. <u>Ross v. Oklahoma</u>, 487 U.S. 81, 85 (1988) ("It is well settled that the Sixth and Fourteenth Amendments guarantee a defendant on trial for his life the right to an impartial jury.). "The constitutional standard for juror impartiality requires that an individual juror be able to "lay aside his ... opinion and render a verdict based on the evidence presented in court." <u>See</u> <u>Irvin v. Dowd</u>, 366 U.S. 717, 723 (1961). In determining whether the petitioner was deprived his constitutional right to a fair trial before an impartial jury, the court considers whether any "member of the jury as finally composed was removable for cause[.]" <u>Rivera v. Illinois</u>, 556 U.S. 148, 158 (2009).

Richards offers no evidence to substantiate his claim that persons who admitted they could not be impartial were not rehabilitated or removed from the venire and were selected as jurors. He has not shown that challenges for cause were made on that basis or that the trial court refused <u>any</u> challenge for cause. To the contrary, the minutes reflect that a total of 22 prospective jurors were removed from the panel for cause and five were removed by consent.[38] Further, while petitioner

---

[37] State Rec. Vol. 2 of 5, trial transcript, pp. 31-32, dated October 13, 14 and 15, 2010.
[38] State Rec. Vol. 1 of 5, minute entry dated October 13, 2010; minute entry dated October 14, 2010.

alleges that he had no option but to accept objectionable jurors because his counsel had utilized all his peremptory strikes, he has not identified or proven that any juror was actually partial. Petitioner has not made a substantial showing that the jury was not impartial. Lagrone v. Cockrell, No. 02-10976, 2003 WL 22327519, at *12 (5th Cir. Sept. 2, 2003).

Petitioner has not offered to this court any evidence, much less clear and convincing evidence, to establish that the state court's rejection of petitioner's jury selection claims was unreasonable or unsupported by the record to overcome the AEDPA presumption of correctness. Miller-El v. Cockrell, 537 U.S. at 240, 251-52. The state court's denial of relief was not contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. Petitioner is not entitled to relief on this claim.

### "Other Crimes" Limiting Instruction

Petitioner contends that his right to a fair trial was violated when the trial court failed to give the jury a limiting instruction regarding the testimony of K.P. Petitioner claims that his counsel asked for a limiting instruction and that the trial court stated that all the proper instructions would be included in the final jury charge, but that the court never gave the instruction.

The state district court denied this claim when petitioner first raised this claim in his application for post-conviction relief.[39] The Fourth Circuit found no error in the district court's ruling.[40] The Louisiana Supreme Court found that petitioner had failed to meet his post-application burden of proof.[41]

In order to obtain federal habeas corpus relief, the petitioner must show that the failure to give a limiting instruction resulted in a fundamentally unfair trial. Smallwood v. Johnson, 73 F.3d

---

[39] State Rec., Vol. 1 of 5, Docket Master entry dated April 8, 2013; minute entry dated April 8, 2013; Order dated April 25, 2013.
[40] State Rec., Vol. 4 of 5, 4th Cir. Opinion, 2015-K-0388, dated May 1, 2015.
[41] State ex rel. Richards v. State, 188 So. 3d 1048 (La. 2016) (per curiam); State Rec., Vol. 5 of 5.

1343, 1349–50 (5th Cir.1996) (citing <u>Thomas v. Estelle</u>, 587 F.2d 695 (5th Cir.1979)). As the United States Fifth Circuit Court of Appeals has explained, "[t]he test applied to determine whether a trial error makes a trial fundamentally unfair is whether there is a reasonable probability that the verdict might have been different had the trial been properly conducted." <u>Kirkpatrick v. Blackburn</u>, 777 F.2d 272, 278-79 (5th Cir. 1985).

Petitioner has not established that a limiting instruction was required to be given. Nor has he demonstrated that the failure to give the instruction rendered his trial fundamentally unfair so as to violate petitioner's constitutional rights. Notably, petitioner does not contest the admissibility of K.P's testimony which was governed by La. Code Evid. art. 412.2, the state's specific evidentiary rule regarding the admissibility of "other crimes" evidence in cases involving certain sexual offenses.

On September 22, 2010, several weeks before trial commenced, the state filed its notice of its intent to present evidence of petitioner's sexually assaultive behavior upon K.P. that resulted in a forcible rape conviction.[42] Before trial commenced, the state district court heard argument from the parties regarding the admissibility of the testimony and determined the K.P.'s proposed testimony and petitioner's prior conviction was admissible as the evidence was indicative of "lustful disposition towards children."[43]

Once the state district court determined the evidence was admissible, if the defense desired a limiting instruction regarding K.P.'s testimony, it was incumbent on defense counsel to request it. Specifically, La. Code Evid. art. 105 provides:

> When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury

---

[42] State Rec., Vol. 1 of 5, State's Notice of Intent under La. C.E. Art.412.2 dated September 22, 2010.
[43] State Rec., Vol. 2 of 5, trial transcript, pp. 6-15, dated October 13,14 and 15, 2010.

accordingly. Failure to restrict the evidence and instruct the jury shall not constitute error absent a request to do so.

In the instant case, there is no indication that a request for a limiting instruction was ever made, much less improperly denied.[44] There is no mention of a limiting instruction by either counsel or the trial court during the pretrial hearing. During trial, the court overruled defense counsel's contemporaneous objection to K.P.'s testimony, however, the record does not reflect that defense counsel requested a limiting instruction at that time or at any other time during the trial.[45]

Even assuming defense counsel requested a limiting instruction and the trial court refused to give one, petitioner has not established that the absence of the limiting instruction rendered his trial fundamentally unfair. There is no reasonable probability that the verdict in this trial would have been different had a limiting instruction been given. As already noted, there was considerable evidence of petitioner's guilt at trial without consideration of the petitioner's prior crime.

Accordingly, the Court finds that petitioner has failed to show even a violation of state law, much less the violation of federal law which would be required to warrant federal habeas corpus relief.

## Ineffective Assistance of Counsel

Petitioner makes four claims that his counsel was ineffective in failing to: (1) conduct adequate pretrial investigation; (2) subpoena a witness; (3) secure medical evidence; and (4) raise a Batson challenge. As discussed below, these claims have no merit.

---

[44] Petitioner admitted in his application for post-conviction relief that his "recollection of the facts of the case and any objections that [were] made during the critical stages of the trial is very vague…." State Rec., Vol. 4 of 5, Application for Post-Conviction Relief, p. 6, filed March 25, 2013.
[45] State Rec., Vol. 2 of 5, trial transcript, p. 109, dated October 13,14 and 15, 2010.

Petitioner raised these claims in his application for post-conviction relief. The state district court found that petitioner had failed to prove the requisite elements of an ineffective assistance of counsel claim.[46] The Fourth Circuit found no error in that ruling.[47] In the last reasoned decision, the Louisiana Supreme Court found that petitioner failed to show ineffective assistance of counsel under the Strickland standard.[48]

Here, the state court correctly identified the clearly established federal law which governs ineffective assistance of counsel claims: Strickland v. Washington, 466 U.S. 668 (1984). Strickland established a two-prong test for evaluating such claims. Specifically, a petitioner seeking relief must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. Id. at 697. A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions

---

[46] State Rec., Vol. 1 of 5, Docket Master entry dated November 20, 2014.
[47] State Rec., Vol. 4 of 5, 4th Cir. Opinion, 2015-K-0388, dated May 1, 2015
[48] State ex rel. Richards v. State, 188 So. 3d 1048 (La. 2016) (per curiam); State Rec., Vol. 5 of 5.

under prevailing professional norms and in light of all the circumstances.  See Strickland, 466 U.S. at 689; Carty v. Thaler, 583 F.3d 244, 258 (5th Cir. 2009).  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Harrington, 562 U.S. at 104 (citing Strickland, 466 U.S. at 689); Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694, see also Williams v. Thaler, 602 F.3d 291, 310 (5th Cir. 2010).  Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice."  Day v. Quarterman, 566 F.3d 527, 536 (5th Cir. 2009) (quoting Strickland, 466 U.S. at 693).  In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome."  Cullen v. Pinholster, 563 U.S. 170, 189 (2011) (quoting Strickland, 466 U.S. at. 694).  This standard requires a "substantial," not just "conceivable," likelihood of a different result.  Harrington, 562 U.S. at 112.

In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett v. McCotter, 796 F.2d 787, 793 (5th Cir. 1986).  Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief.  See Miller v. Johnson, 200 F.3d 274, 282 (5th Cir. 2000) (citing Ross v. Estelle, 694 F.2d 1008, 1012 (5th Cir. 1983)).

Because petitioner's ineffective assistance of counsel claims were denied on the merits and present mixed questions of law and fact, this Court must defer to the state court decision rejecting those claims unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Moreover, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. ----, ----, 129 S. Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington v. Richter, 562 U.S. 86, 101 (2011) (citation omitted). The Supreme Court then explained:

> Surmounting Strickland's high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo*

review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. *The standards created by* Strickland *and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied* Strickland's *deferential standard.*

Id. at 105 (citations omitted; emphasis added). Therefore, on habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court and the defense attorney the benefit of the doubt." Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation marks omitted). For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claims.

Petitioner's first claim of ineffective assistance of counsel is that his counsel failed to conduct adequate pretrial investigation. He claims that Ray Allen was present in the house and was seated at a computer in the hallway at the time of incident. Petitioner claims Allen would have (1) disputed L.A.'s testimony that petitioner dragged her to the bedroom and sexually assaulted her; (2) disputed Joseph's testimony that he left only L.A. and petitioner at the house; (3) corroborated Williams' testimony that she and petitioner had used the victim's bedroom to have sex; and (4) testified that he told Detective Ross that petitioner did not sexually assault L.A.

To prevail on a claim concerning inadequate investigation and preparation, a petitioner must show that a more thorough investigation or better preparation would have in fact benefited the defense. In other words, he must show that allegedly exculpatory evidence existed and would have been revealed through additional efforts. See Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Wilson v. Cain, Civ. Action No. 06-890, 2009 WL 2163124, at *22 (E.D. La. July 16, 2009), aff'd, 641 F.3d 96 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008). A petitioner cannot show prejudice as to a claim that his counsel failed to investigate without adducing what the investigation would have shown and that the outcome would have been different as a result. Diaz v. Quarterman, 239 F. App'x 886, 890 (5th Cir. 2007) (citing Strickland, 466 U.S. at 696).

Petitioner has provided no proof that his counsel failed to investigate the case. Counsel's questioning of the witnesses at trial shows that he was prepared and informed. A petitioner's bare speculation that additional investigation would have resulted in a different outcome at trial is insufficient to prove the prejudice required to prevail on such a claim. See Thomas v. Cain, Civ. Action No. 09-4425, 2009 WL 4799203, at *9 (E.D. La. Dec. 9, 2009).

As for petitioner's claim that his counsel was ineffective by failing to subpoena Allen, the Fifth Circuit has held that complaints of uncalled witnesses are not favored in federal habeas corpus review of an ineffective assistance of counsel claim, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative. Day, 566 F.3d at 538. In order to demonstrate prejudice arising from failure to call witnesses, the petitioner must show that the witness was available to testify and would have done so and that the testimony would have been favorable. Woodfox v. Cain, 609

F.3d 774, 808 (5th Cir. 2010); Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985). There must be a " 'reasonable probability' that the uncalled witnesses would have made [a] difference to the result." Id., at 603 (citation omitted).

Here, petitioner presented no evidence, such an as affidavit from Allen, showing that he was available and would have testified in a manner beneficial to the defense. Therefore, petitioner obviously failed to meet his burden of proof with respect to this claim. See, e.g., United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); Buniff v. Cain, Civ. Action No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011); Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); Combs v. United States, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); Harris v. Director, TDCJ-CID, No. 6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

Petitioner's next claim is that his counsel was ineffective for failing to obtain and present the medical records of petitioner and Williams to show that neither of them had any sexually transmitted diseases.

Petitioner has not shown the actual existence of medical records that would have demonstrated that neither he nor Williams, his then-girlfriend, had chlamydia during the time frame on or around October 2007 when the rape was alleged to have occurred. As a result, this claim of ineffective assistance of counsel has no merit. Battle v. Thaler, Nos. 3:11–CV–3097–D, 3:11–CV–3098–D, 2013 WL 2367779, *6 (N.D. Tex. May 30, 2013) (petitioner failed to establish ineffective assistance of counsel where he failed to show the existence of any other medical records establishing that he did not have a sexually transmitted disease during the relevant time-frame); Wells v. Dretke, No. 3-03-CV-2522-P, 2004 WL 414917, at *3 (N.D. Tex. March 4, 2004) (petitioner failed to show ineffective assistance of counsel in failing to introduce test results showing that petitioner did not have trichomonas where petitioner did not produce any medical records or other evidence to support his claim that he tested negative).

In his final claim of ineffective assistance of counsel, Richards appears to claim that his counsel was ineffective in failing to object to the prosecution's use of peremptory challenges to strike African-Americans. As explained above, he has failed to provide even minimal evidence in support of his claim, either here or in the state courts. Accordingly, Richards has clearly failed to satisfy his burden of proof to show that his counsel failed to make what would have been a meritorious objection which would entitle him to relief under Strickland. See Turner v. Epps, No. 07-77, 2010 WL 653880, at *7 (N.D. Miss. Feb 19, 2010) ("As Petitioner cannot establish that any minority venire person was struck by the State, much less that they were struck with a discriminatory intent, he cannot establish ineffective assistance of counsel on this conclusory argument"); Bell v. Director, TDCJ-CID, No. 03-36, 2005 WL 977771, at *6 (E.D. Tex. Nov. 2, 2005)(citations omitted) (Petitioner's claim that a juror was improperly struck "is a conclusory allegation ... insufficient to support a petition for a writ of habeas corpus."); Eastridge v. United

_States_, 372 F.Supp.2d 26, 61 (D.D.C. May 26, 2005) ("Petitioners cannot establish improper application of peremptory challenges because they present no evidence of selective exclusion and cannot produce evidence of the racial composition of the venire.").

In summary, to be entitled to relief, petitioner must demonstrate that the state court decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. He clearly has not made that showing in the instant case. Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Roger L. Richards be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); see Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this eighth day of August, 2017.

**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**